GLORIA B. GRAYSON, Respondent, *v.* IRVMAR REALTY CORP., Appellant, et al., Defendants.

First Department, March 31, 1959.

*William J. Tropp* for appellant.

*Benjamin H. Siff* of counsel (*Gair & Gair,* attorneys), for respondent.

BREITEL, J.  The principal issue raised in this personal injury negligence case is whether the court, in permitting the jury to award substantial damages to plaintiff for the impairment or frustration of her inchoate operatic career, committed error. In addition, defendant contends that the damages awarded are, in any event, excessive.  Some question is also raised as to liability, but it does not merit discussion.

Plaintiff, a young woman who is engaged seriously in the study of music looking to the development of an operatic career, sustained a fractured leg and an alleged impairment of her hearing as a result of a fall on the sidewalk in front of defendant's premises.  The act of negligence charged was the failure to light properly a construction sidewalk bridge, as required by the Administrative Code of the City of New York (§ C26–557.0).  The jury awarded damages in the amount of $50,000.

There is no dispute that one tortiously injured may recover damages based upon the impairment of future earning capacity. There is also no dispute that the assessment of damages may be based upon future probabilities and is not confined to actual earnings prior to the accident.  The unusual issue tendered in this case is whether there may be a similar assessment where the probability of future earnings is not based upon any prior actual engagement in the vocational earning of income.  In that respect it is not unlike the situation in death actions where the pecuniary benefit to survivors must be determined with respect to children or very young people whose income potentiality has not yet been developed.  The situation, on the other hand, is a little different, again, from that of young persons training for occupations, especially professions, where the probability of completion of training is high, and the resultant earning of at least a modal income is equally highly probable.  The reason for this last difference is that in the case of persons of rare and special talents many are called but few are chosen.  For those who are not chosen, the probabilities of exploiting their talents financially are minimal or totally negative.  In this class

would fall the musical artist, the professional athlete, and the actor.

It should be clear that one possessed of rare and special talents is entitled to recover damages for tortious injury to the development of those talents. This, too, may have a pecuniary value which is assessable, albeit without the degree of precision one would require in a commercial case. On this view, the court properly submitted to the jury the question of assessing the damages to plaintiff's operatic career, inchoate though it may have been. But, in the light of the proper distinctions, the jury's award of $50,000 was grossly excessive.

At the time of the accident plaintiff was 21 and had been graduated from high school. Since some undisclosed age as a child, she had studied music and singing. This included five years of instrumental instruction. In the later years she had a professional teacher of voice and studied under an opera coach. When she left school she participated successively in operatic workshops. As part of her operatic studies it was necessary to learn the various foreign languages closely associated with classic opera. While engaged in her studies she made a large number of appearances, all without income, on the radio, in benefit performances, and in workshop-productions of opera. Her voice teacher and opera coach testified that she had a superior voice and, as a consequence, had a bright future, in their opinion, in the opera. There was testimony that plaintiff was preparing for a European debut.

Plaintiff sustained her injuries when she fell, catching her foot in a hole. Her leg was then fractured. At the same time her head struck the surface, as a result of which she claims she sustained an impairment of hearing. The alleged hearing impairment has largely cleared up, leaving, however, a sequela of an impairment of pitch. Although she has continued to study singing and made a number of appearances of the same character as she had made before the accident, it is claimed that the impairment of pitch has limited her performance and that this is likely to be permanent. This claim was supported by her voice teacher and by medical testimony. However, there was highly credible proof from an eminent physician selected from the court-designated medical panel, offered by defendant, to the effect that any impairment of hearing she had was due to a diseased condition which existed before the accident. The jury might well have, but did not, accept this testimony, despite still other proof that plaintiff had had ear trouble prior to the accident.

As already noted, it is undisputed that a person tortiously injured is entitled to recover for impairment of future earning capacity, without limitation to the actual earnings which preceded the accident. (Restatement, Torts, § 912; 25 C. J. S., Damages, §§ 86, 87.) In death actions, and in the cases of injuries, involving very young people whose vocational potentialities have not yet been developed, the courts have allowed assessment of damages based on future, and not presently realized, earning capacity. (*Ihl* v. *Forty-second St. & Grand St. Ferry R. R. Co.*, 47 N. Y. 317; *Oldfield* v. *New York & Harlem R. R. Co.*, 14 N. Y. 310; *Nicholas* v. *Maxwell Motor Corp.*, 237 Mich. 612; see Ann. 149 A. L. R. 234; Ann. 14 A. L. R. 2d 485.)

The courts have also allowed juries to assess damages on future earning capacities based in turn upon probable promotions (*Geary* v. *Metropolitan St. Ry. Co.*, 73 App. Div. 441; *Briscoe* v. *United States*, 65 F. 2d 404; *Kalland* v. *City of Brainerd*, 141 Minn. 119; contra *Payne* v. *Lyon*, 154 Ga. 501).

In the case of young people engaged in the study for occupations or professions requiring a great deal of preliminary or formal training the courts have also permitted the assessment of damages based on future earning potential after the training period would have been completed (*Calihan* v. *State of New York*, 36 N. Y. S. 2d 840, affd. 266 App. Div. 815; *Brink* v. *Kessler*, 310 Pa. 506). And even in the case of singers, and presumably, therefore, in the case of other musical artists, some courts in other jurisdictions have had occasion to permit juries to assess damages based on future earning potential although at the time of the accident the would-be artist's career is inchoate (*Halloran* v. *New York, New Haven & Hartford R. R. Co.*, 211 Mass. 132; *Rhinesmith* v. *Erie R. R. Co.*, 76 N. J. L. 783; cf. *Weddle* v. *Phelan*, 177 So. 407, 412 [La.]).

On this analysis the jury in this case was very properly permitted to assess the damages with respect to plaintiff's inchoate operatic career. But the award it made was highly excessive.

It is at this point that the distinction must be made between persons who largely exploit native talents and those who exploit intensive training. It is notable that those who exploit rare and special talents may achieve exceedingly high financial rewards, but that the probability of selection for the great rewards is relatively low. On the other hand, those who, provided they have the intelligence and opportunities, train for the more skilled occupations and professions, not so heavily dependent upon unusual native gifts, will more likely achieve their objectives.

The would-be operatic singer, or the would-be violin virtuoso, or the would-be actor, are not assured of achieving their objectives merely because they have some gifts and complete the customary periods of training. Their future is a highly speculative one, namely, whether they will ever receive recognition or the financial perquisites that result from such recognition. Nevertheless, the opportunities exist and those opportunities have an economic value which can be assessed, although, obviously, without any precision. But a jury may not assume that a young student of the opera who has certain gifts will earn the income of an operatic singer, even in the median group.

In determining, therefore, the amount to be recovered, the jury may consider the gifts attributed to plaintiff; the training she has received; the training she is likely to receive; the opportunities and the recognition she already has had; the opportunities she is likely to have in the future; the fact that even though the opportunities may be many, that the full realization of those opportunities is limited to the very few; the fact that there are many other risks and contingencies, other than accidents, which may divert a would-be vocal artist from her career; and, finally, that it is assessing directly not so much future earning capacity as the opportunities for a practical chance at such future earning capacity.

The foregoing factors to be considered must reflect substantial development in the would-be artist's career. Every gleam in a doting parent's eye and every self-delusion as to one's potentialities must be skeptically eradicated. The jury is not to assess within the limits of wishful thinking but is to assess the genuine potentialities, although not yet realized, as evidenced by objective circumstances. Thus viewed, plaintiff here was undoubtedly serious about her operatic career; but, except from her teachers, she had not achieved any spectacular or extraordinary recognition for her talents. It is not the dilettante interest that has a pecuniary value, but the genuine opportunity to engage in a serious artistic career. In this context no effort has been made to consider the possible issues, sometimes tendered, as to the compensability for artistic pursuits indulged in solely for self-enjoyment, but impaired as a result of tortious injury (see *Freeland* v. *Brooklyn Heights R. R. Co.*, 54 App. Div. 90, 94; *Nossokoff* v. *Pittsburgh*, 380 Pa. 422; *Hogan* v. *Santa Fe Trail Transp. Co.*, 148 Kan. 720).

Based on the preceding discussion and the proof in this case, and allowing for the injury sustained by plaintiff to her leg, any verdict in excess of $20,000 is excessive.

Accordingly, the judgment in favor of plaintiff should be reversed, on the law and on the facts, and a new trial granted, unless plaintiff stipulates to accept a judgment in the reduced amount of $20,000, in which event the judgment should be modified in that respect and affirmed as modified, with costs to defendant-appellant.

BOTEIN, P. J., and BASTOW, J., concur with BREITEL, J.; VALENTE and McNALLY, JJ., concur in part and dissent in part and vote to reverse the judgment in favor of plaintiff, on the law and on the facts, and to grant a new trial, unless plaintiff stipulates to accept a judgment reduced to the amount of $5,000, in which event the judgment should be modified as thus reduced and, as so modified, affirmed, with costs to defendant-appellant, on the following ground: The proof with respect to the impairment of hearing and that it was caused by the accident is against the weight of the credible evidence and, as a consequence, the credible evidence does not support any award in excess of that allowable for the fractured leg.

Judgment reversed, on the law and on the facts, and a new trial granted, unless plaintiff stipulates to accept a judgment in the reduced amount of $20,000, in which event the judgment is modified in that respect and, as so modified, affirmed, with costs to defendant-appellant.

Settle order on notice.