■ ISABELL WANAMAKER, Individually and as Administratrix of the Estate of MARTIN WANAMAKER, Deceased, Respondent, v JULIE PIETRASZEK et al., Appellants. (Appeal No. 1.) — Appeals unanimously dismissed, without costs, as moot (see *Wanamaker v Pietraszek* [appeal No. 2], 107 AD2d 1020). (Appeals from order and judgment of Supreme Court, Erie County, Kuszynski, J. — automobile negligence.) Present — Dillon, P. J., Hancock, Jr., Callahan, Doerr and Schnepp, JJ.

■ ISABELL WANAMAKER, Individually and as Administratrix of the Estate of MARTIN WANAMAKER, Deceased, Respondent, v JULIE PIETRASZEK et al., Appellants. (Appeal No. 2.) — Judgment unanimously reversed, on the law and facts, without costs, and new trial granted on the issue of damages only. Memorandum: There is no merit to defendants' claim that the trial court should have presented the question of decedent's contributory negligence to the jury, and the jury's finding as to the proportionate liability of each defendant is amply supported in the record. The verdict of $252,000 is excessive, however, and since it cannot be said that the erroneous admission of evidence designed to show decedent's potential for future earnings did not contribute to the excessive award, there must be a new trial on the issue of damages only (*De Cicco v Methodist Hosp.,* 74 AD2d 593; see, also, *Caprara v Chrysler Corp.,* 52 NY2d 114, 136-138).

This is a wrongful death action in which decedent Martin Wanamaker died instantly in an automobile accident on March 25, 1976. He was then 21 years old and was the only child of his surviving widowed mother, Isabell Wanamaker, who testified at trial in 1983 that she was then 64 years of age. Decedent had resided with his mother and prior to his death their combined total income resulted from Social Security benefits and certain Veterans Administration benefits paid on account of decedent's father's military service.

In 1973 decedent commenced working for Airport Gypsum, a subsidiary of U.S. Gypsum. As a participant in the company's college education program, he attended Canisius College from January to May, 1974 but did not qualify to remain in the company-sponsored program because he was unable to maintain

the required scholastic average. He entered Villa Maria, a two-year college, in September, 1974, and although he remained as a full-time student until the date of the accident, his scholastic record demonstrates that he would have been unable to complete the program in less than three years.

His employment record indicates that his earnings at Airport Gypsum were approximately $2,700 in 1973 and approximately $1,300 in 1974. No records could be found for 1975, and decedent did not work in 1976. To show decedent's potential for future earnings, plaintiff introduced the testimony of decedent's cousin, Francis Lenahan. He testified that he had commenced working at Airport Gypsum in 1972; that he had participated in the company-sponsored college education program; that he received a bachelor's degree in business accounting and was then working toward his master's degree; that he had received various promotions and that he was currently a plant manager of a U.S. Gypsum subsidiary in Virginia. Over objection he was allowed to testify that he was earning approximately $62,000 per year. He also testified that decedent had all the characteristics Airport Gypsum valued in an employee and that it was his and decedent's plan that decedent would return to Airport Gypsum upon completion of his schooling.

Kevin Dunwoodie, a friend of decedent's testified that he and decedent began working for Airport Gypsum in 1973 and that he had also dropped out of the company-sponsored program, but that he continued to work for Airport Gypsum. He stated that he had been promoted to operation supervisor and at the time of trial was making $25,000 per year. In a further effort to show decedent's potential for future earnings, Dunwoodie testified that his next promotional step would be branch manager, and over objection, he was allowed to state that branch managers earn $40,000 to $50,000 per year. In a wrongful death action, a jury may consider increases in future earnings based upon existing facts and circumstances, where it is probable that such increases will be forthcoming (*Geary v Metropolitan St. Ry. Co.,* 73 App Div 441). Mere speculation, however, as to how much a young decedent would have earned had he continued to live, or how much he might have contributed to a parent, does not serve as an adequate basis for determination of damages (*Franchell v Sims,* 73 AD2d 1; *Grayson v Irvmar Realty Corp.,* 7 AD2d 436). While there can be no certainty of such proof in a wrongful death action (*Zaninovich v American Airlines,* 26 AD2d 155), the evidence may be received if there is sufficient probability of decedent's future earnings (*Grayson v Irvmar Realty Corp., supra; Geary v Metropolitan St. Ry. Co., supra*). Here, while

there may have been a few fair comparables between decedent and the witness Dunwoodie, there were none as between decedent and the witness Lenahan (cf. *Faulk v Aware, Inc.,* 19 AD2d 464, 470-471, affd 14 NY2d 899, mot to amend remittitur granted 14 NY2d 954, cert den 380 US 916). The latter's testimony of his advancement in the company and his salary increments was completely nonprobative of decedent's future earning capacity. The reception of Lenahan's testimony as to his current salary and Dunwoodie's testimony as to his future salary potential gave rise to a danger that the jury would "regard as probable what is at most only possible * * * This evidence was incompetent, and * * * its reception [was] prejudicial error" (*Geary v Metropolitan St. Ry. Co.,* 73 App Div 441, 444, *supra*).

This is not to say, however, that plaintiff's proof of decedent's prospective earnings is necessarily to be limited to his past earnings, but it is only to emphasize that the jury must be afforded some predicate for its determination of future earnings (see *Grayson v Irumar Realty Corp.,* 7 AD2d 436, *supra*). (Appeal from judgment of Supreme Court, Erie County, Kuszynski, J. — automobile negligence.) Present — Dillon, P. J., Hancock, Jr., Callahan, Doerr and Schnepp, JJ.